## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 93-491** |
| **MAXON HARVEY MORGAN** | **SECTION I** |

### ORDER & REASONS

Before the Court is *pro se* defendant Maxon Harvey Morgan's ("Morgan") motion[1] for reconsideration of the Court's order[2] denying his previous motion[3] for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), as well as a motion[4] to expedite consideration of same.  The government opposes the motion for reconsideration.[5]  For the following reasons, the motion to reconsider is granted, the motion for compassionate release is denied, and the motion to expedite is dismissed as moot.

### I.

The facts of Morgan's case are familiar to the Court.[6]  Morgan is currently incarcerated at the D. Ray James Correctional Facility ("D. Ray James"), and his

---

[1] R. Doc. No. 545.  Morgan filed a motion for appointment of counsel, R. Doc. No. 548, which the Court denied.  R. Doc. No. 549.
[2] R. Doc. No. 543.
[3] R. Doc. No. 538.
[4] R. Doc. No. 557.
[5] R. Doc. Nos. 547 & 554.
[6] *See* R. Doc. Nos. 543 & 540-1, at 1.

1

projected release date is March 12, 2023.[7]  Morgan has a detainer filed against him by U.S. Immigration and Customs Enforcement.[8]

On April 27, 2020, Morgan filed a motion requesting that the Court reduce his sentence.[9]  In his initial motion, Morgan argued that a sentence reduction was warranted because he was allegedly unable to receive adequate medical treatment for his sleep apnea at the D. Ray James,[10] and because he was exposed to the risk of contracting COVID-19 while incarcerated.[11]  Morgan did not assert, however, that he had submitted a request for a sentence reduction to the warden of D. Ray James or otherwise exhausted his administrative remedies with the Bureau of Prisons ("BOP"). The government entered its opposition to Morgan's motion on May 14, 2020.[12]  The Court dismissed without prejudice Morgan's motion on June 1, 2020.[13]

On June 16, 2020, Morgan filed this motion for reconsideration.[14]  Morgan argues that he has satisfied the administrative exhaustion requirement and that his medical condition constitutes an extraordinary and compelling reason for a sentence

---

[7] R. Doc. No. 540, at 2.
[8] *Id.* at 7, & 540-2.
[9] R. Doc. No. 538, at 4.  The motion is dated April 24, 2020, and it was filed with the Court three days later.
[10] *Id.* at 3–4.  Specifically, Morgan asserted that he had not been provided with a Continuous Positive Airway Pressure ("CPAP") machine, which is used to treat sleep apnea.  Morgan states that he was previously provided with a CPAP machine when he was incarcerated at FCI Hazelton, but the machine was "lost in transit" when he was transferred to D. Ray James on May 21, 2019.  *Id.* at 3.  On August 8, 2019, Morgan's administrative request for a CPAP machine at D. Ray James was denied. *Id.* at 7.
[11] *See id.* at 2–3.
[12] R. Doc. No. 540.
[13] R. Doc. No. 543.
[14] R. Doc. No. 545.

reduction,[15] repeating his allegations regarding sleep apnea.[16] In his motion for reconsideration, Morgan states that "on 5/19/20, the petitioner was issued a (C-Pap) [sic] machine."[17]

In support of his motion for reconsideration, Morgan appends his inmate profile. A highlighted portion, dated April 25, 2020, reads: "COVID HOME CONFINEMENT DENIAL."[18] Also attached is a copy of a hand-written letter in which Morgan requests medical attention for sleep apnea, "[a]nd consideration for an

---

[15] *See* R. Doc. No. 545, at 2. In his motion for reconsideration, Morgan also argues that the Court should grant him compassionate release because systems of injustice have boded ill for civilizations through human history, referencing Babylon and Rome among others. *See id.* at 3–6. Morgan warns the Court that denying his release would further injustice. *See id.* at 6.
[16] *Id.*
[17] *Id.* at 2.
[18] R. Doc. No. 545-1, at 1. To the extent that Morgan's request can be construed as requesting home confinement, the Court notes that it cannot grant such relief. As many district courts have found, the language of [the home confinement statute authorizes the Attorney General, through the BOP, to modify the method of imprisonment; it does not permit the courts to do so. 18 U.S.C. § 3622. Likewise, authority to lengthen the maximum amount of time for home confinement under the CARES ACT is squarely allocated to the Attorney General, in his or her role overseeing the BOP. Hence, if defendant intends to continue to pursue this method of release, he must do so through BOP procedures. Moreover, D. Ray James, where Morgan is incarcerated, is located in the Southern District of Georgia, not the Eastern District of Louisiana and, therefore, it is outside the Court's jurisdiction. *See, e.g., United States. v. Crinel*, No. 15-61, 2020 WL 3884521, at *7–*8 (E.D. La. July 9, 2020) (Morgan, J.) (explaining that a "challenge to an administrative decision of BOP pursuant to 28 U.S.C. § 2241 must be filed in the district where [defendant] is incarcerated"). Accordingly, the Court cannot order that Morgan be released to home confinement. *See also* R. Doc. No. 540, at 22–25. Additionally, Morgan is ineligible for home confinement as a result of the immigration detainer lodged against him. *See id.* at 24.

early release from prison because of Covid 19. . ."[19]  In light of these alleged circumstances, Morgan asks that the Court reduce his sentence.[20]

The government opposes Morgan's motion, arguing that it should be denied because Morgan's medical conditions are not an "extraordinary and compelling" reason warranting his release.[21]  The government describes BOP's general response to COVID-19 and outlines the various precautions being taken to safeguard inmates nationwide.[22]

The government confirms that Morgan sought compassionate release through the BOP's administrative processes.[23]  The government includes the warden's denial letter, which states that according to Health Services staff Morgan was "at a Low risk to the disease and complications should exposure occur[,]" and that Morgan's stated "medical concerns . . . show minimal correlation" with COVID-19 complications.[24]  The government also adds that Morgan "does not identify how he fits into any of the[] categories" warranting compassionate release, "much less satisfy his burden as to them."[25]

---

[19] *Id.* at 3.  Morgan also submitted documentation of a request for a CPAP machine, *id.* at 4, and the facility administrator's response denying it.  *Id.* at 2.
[20] R. Doc. No. 545, at 2.
[21] R. Doc. Nos. 540, at 19–22 & 554, at 2.
[22] R. Doc. No. 540, at 2–7.
[23] R. Doc. No. 554, at 2 (amending and supplementing the government's response to Morgan's motion for compassionate release and stating that "[t]he BOP responded that the defendant was correct.  The defendant had, indeed, requested release based on Covid-19[]"); *see also* R. Doc. No. 554-1.
[24] R. Doc. No. 554-1, at 1.
[25] R. Doc. No. 540, at 20.

II.

Though motions for reconsideration in criminal actions "are nowhere explicitly authorized in the Federal Rules of Criminal Procedure, they are a recognized legitimate procedural device." *United States v. Cotto*, No. 16-36, 2020 WL 3832809, at *1 (E.D. La. July 8, 2020) (Lemmon, J.) (quoting *United States v. Lewis*, 921 F.2d 563, 564 (5th Cir. 1991)). Nevertheless, the Fifth Circuit has held that "if a motion for reconsideration is filed within twenty-eight days after entry of the judgment from which relief is being sought, the motion is treated as motion to alter or amend under Rule 59(e)." *Cotto*, 2020 WL at * 1 (citing *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004)); *see also* Fed R. Civ. P. 59(e). Morgan filed his motion for reconsideration sixteen days after the Court dismissed without prejudice his motion for compassionate release and is therefore subject to the standards for Rule 59(e).[26]

A motion for reconsideration under Rule 59(e) "calls into question the correctness of a judgment." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (citation omitted). A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* Instead, a Rule 59(e) motion merely allows "a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* Rule 59(e) also allows a party to bring an intervening change in the controlling law to the Court's attention. *See Schiller v. Physicians Res. Group, Inc.*,

---

[26] R. Doc. No. 545. Rule 59(e) states: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59.

5

342 F.3d 563, 567–68 (5th Cir. 2003). Rule 59(e) relief is an extraordinary remedy and should be used sparingly. *See Templet*, 367 F.3d at 479. Courts in the Fifth Circuit have both granted and denied motions for reconsideration in the context of 18 U.S.C. § 3582(c)(1)(A). *See, e.g., United States v. Ansari*, No. CR 07-337, 2020 WL 4284340, at *2 (E.D. La. July 27, 2020) (Fallon, J.) (denying the defendant's motion to reconsider his previous motion for compassionate release); *United States v. Carney*, No. 14-154, 2020 WL 4747716, at *1, *3 (E.D. La Aug. 17, 2020) (Barbier, J.) (granting the defendant's motion for reconsideration where the Court initially denied the defendant's motion for compassionate release on the ground that the defendant had not proven exhaustion of his administrative options, but, upon the defendant's motion to reconsider, stating that "[n]ow, it is undisputed that . . . Defendant did send a request to the Warden asking for a compassionate release motion to be filed on his behalf").

In the instant case, as in *Carney*, the government newly acknowledges that Morgan submitted a request for compassionate release in satisfaction of the administrative exhaustion requirements.[27] Accordingly, Morgan meets Rule 59(e)'s standard for reconsideration.

### III.

---

[27] R. Doc. No. R. Doc. No. 554, at 2. *See Carney*, 2020 WL at *1 ("At issue . . . was whether Defendant had petitioned the Warden to file a compassionate release motion on his behalf in April of 2020. After reviewing evidence proffered by both parties, the Court concluded Defendant had not proven exhaustion of his administrative options, and therefore his motion had to be denied as premature. Now, it is undisputed that on June 29, 2020, Defendant did send a request to the Warden asking for a compassionate release motion to be filed on his behalf.") (citations omitted).

In relevant part, 18 U.S.C. § 3582(c)(1)(A)(i) provides that a court may not modify a term of imprisonment unless a motion is made after the prisoner has exhausted his administrative remedies and the court, after considering the factors set forth in 18 U.S.C. § 3553(a), finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*.

The Sentencing Commission's relevant policy statement provides that extraordinary circumstances exist when the defendant suffers from a terminal illness or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13.

Although, historically, sentence reductions could be ordered only upon a motion by the Director of the BOP, the First Step Act of 2018 amended the statute to additionally allow prisoners to petition the Court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). However, the Sentencing Commission's policy statements have not been amended since the enactment of the First Step Act and, consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. § 3582(c)(1)(A) as amended. The relevant policy statement continues to plainly provide that a term

7

of imprisonment may be reduced only upon a motion by the Director of the BOP upon a finding of extraordinary circumstances warranting a sentence reduction and a determination that the defendant is not a danger to the safety of any person or the community at large. U.S.S.G. § 1B1.13 cmt. n.4. This discrepancy has been recognized by many courts. *See United States v. Perdigao,* 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (collecting cases).

Courts have concluded that this discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act. *See, e.g., United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). Consequently. these district courts have found that they have discretion to determine what constitutes "extraordinary and compelling reasons" on a case-by-case basis, and that the policy statement, while helpful, is not dispositive with regard to such claims. *See id.* ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("[W]hen a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief."); *see also United States v. Haynes*, No. 93-1043, 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases).

Accordingly, the Court will consider whether Morgan has presented the Court with evidence that "extraordinary and compelling reasons" warrant compassionate release and that he does not pose a danger to the safety of any other person or the community, all in light of the § 3553(a) factors.

### A. Exhaustion of Administrative Remedies

Section 3582 allows a court to consider a defendant's motion for modification of a term of imprisonment only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). As the government concedes, this requirement is clearly satisfied.[28]

The warden of the facility at which Morgan is incarcerated denied Morgan's request for compassionate release on June 21, 2020.[29] The government agrees that Morgan satisfied the exhaustion requirement.[30] Accordingly, the Court has jurisdiction to consider Morgan's motion. *See* 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons

Although the policy statements of the Sentencing Commission have not been amended to reflect the statutory changes brought about by the First Step Act, the policy statements are nevertheless instructive to the Court's determination of whether there are "extraordinary and compelling reasons" that warrant a reduction

---

[28] R. Doc. No. 554, at 2.
[29] R. Doc. No. 554-1, at 1.
[30] R. Doc. No. 554, at 2.

of Morgan's sentence. *See Perdigao*, 2020 WL at *2; *Beck*, 425 F. Supp. 3d at 579. The Sentencing Commission's relevant policy statement provides, in pertinent part, that extraordinary circumstances exist when the defendant suffers from "a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A).

Morgan claims to suffer sleep apnea.[31] There is no evidence that sleep apnea increases the risk of COVID-19 infection or increases the severity of infection if exposed.[32] Additionally, sleep apnea does not rise to the level of terminal illness or substantially diminish Morgan's ability to provide self-care from within D. Ray James. Indeed, Morgan's receipt of a CPAP machine evidences that he is able to care for his sleep apnea within prison.[33] *See United States v. Mazur*, No. CR 18-68, 2020

---

[31] R. Doc. No. 545, at 2.
[32] *See People with Certain Medical Conditions*, Coronavirus Disease 2019 (COVID-19), CDC (July 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (listing the underlying medical conditions that present an increased risk for severe illness from COVID-19 and not mentioning sleep apnea).
[33] R. Doc. No. 545, at 2. The government notes, in its opposition to Morgan's motion for reconsideration of compassionate release, that "chronic untreated sleep apnea can lead to serious conditions including heart failure and blood pressure." R. Doc. No. 540, at 1–2 (citing National Institutes of Health, "Obstructive Sleep Apnea in Hearth [sic] Failure: Review of Prevalence, Treatment with Continuous Positive Airway Pressure, and Prognosis," *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6059510/#idm139685989876048title ). The government then suggests that "[t]he Court, if it deems it appropriate, should request that the BOP furnish the defendant with a CPAP. . . ." *Id.* at 1. *See also id.*

10

WL 2113613, at *3 (E.D. La. May 4, 2020) (Africk, J.) ("Courts have also taken into account the quality of healthcare provided to the defendant while incarcerated and whether granting the defendant compassionate release would have far-reaching implications, i.e. whether a large number of incarcerated defendants could be granted early release on the same grounds.").

Furthermore, courts have found that sleep apnea does not amount to an extraordinary or compelling reason for release. *See United States v. Celestine*, No. 18-83, 2020 WL 3791889, at *1, *3 (E.D. La. July 7, 2020) (Milazzo, J.) (denying a motion for compassionate release where the defendant was 59 years old and suffered from hypertension, high cholesterol, and sleep apnea because the defendant did "not identif[y] any medical condition that puts him at a greater risk for severe consequences from contracting COVID-19."); *United States v. Josey*, No. 17-565, 2020 WL 4192978, at *3 (S.D. Tex. July 20, 2020) (denying a motion for compassionate release where the defendant claimed to suffer high cholesterol, hyperthyroidism, PTSD, anxiety, sleep apnea, and complications from a previous injury to her back and neck that cause breathing difficulties while eating, drinking, and sleeping because the defendant "has failed to offer evidence of any underlying medical condition that would make her particularly vulnerable to severe illness or death should she contract COVID-19"); *United States v. Jones*, No. 15-61, 2020 WL 3606369, at *3 (E.D. La.

---

at 9 ("[T]he government opposes such release, with the caveat that the Court should order the D. Ray James CI to provide a CPAP mask for the defendant."). However, as noted *supra*, in his motion for reconsideration for compassionate release, Morgan states that "on 5/19/20, the petitioner was issued a (C-Pap) [sic] machine." R. Doc. No. 545, at 2. The issue is, therefore, moot.

11

July 2, 2020) (Morgan, J.) (denying compassionate release because the defendant's alleged sleep apnea, hypertension, and past heart attack "are not on par with the examples of 'serious and advanced illness[es]' listed in the policy statement"). Similarly, Morgan's reported medical condition does not provide grounds for compassionate release.

Morgan's more general concerns regarding COVID-19 also do not warrant a reduction of his sentence. BOP is undertaking measures to curb the spread of COVID-19 and to limit inmates' risk of contracting it.[34] Numerous courts have concluded that such broad allegations do not warrant a sentence reduction under § 3582. *See United States v. Zywotko*, No. 19-113, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.") (quoting *United States v. Eberhart*, No. 13-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)); *United States v. Gileno*, No. 19-161, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) ("With regard to the COVID-19 pandemic, Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

While the Court is alert to the risks of COVID-19 infection in correctional facilities, Morgan has also not demonstrated that BOP's response to the COVID-19

---

[34] *See* R. Doc. No. 540, at 2–7.

12

pandemic and the protocols it has implemented to curtail the spread of the virus are inadequate.[35] Moreover, the existence of COVID-19 at D. Ray James alone cannot independently justify compassionate release.[36] *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

### C. Safety to Others and the Community

Even if the Court were to find that Morgan's circumstances presented extraordinary and compelling reasons to grant compassionate release, he still has not demonstrated that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) requires the Court to consider factors such as the nature and circumstances of the charged offense, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community at large that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

---

[35] As the government advised, the BOP has implemented revised preventative measures for all institutions, including quarantine and isolation procedures, to require that all newly-admitted inmates be assessed using a screening tool and temperature check. R. Doc. No. 540, at 2–7; *see BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited August 28, 2020). Asymptomatic inmates are placed in quarantine for a minimum of 14 days or until cleared by medical staff, and symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. *Id.* Although the facility in which Morgan is incarcerated is operated by a private detention contractor, the BOP states that "[t]his COVID-19 guidance is being shared with private prisons and RRCs for dissemination to staff and inmates in these facilities, so that similar protocols can be implemented." *Id.*

[36] At D. Ray James, 101 inmates have been confirmed to be positive for COVID-19, 89 inmates have recovered from the virus, and 1 inmate has died from it. *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited August 31, 2020).

Morgan was convicted at trial in June 1994 of conspiring to import cocaine hydrochloride, a Schedule II narcotic drug controlled substance, , from Honduras to the United States, in violation of 18 U.S.C. § 963.[37] In furtherance of the conspiracy, Morgan would sail to Honduras to deliver money toward the purchase of more than 500 kilograms of cocaine.[38] Moreover, Morgan's sentence was enhanced for obstruction of justice; just two months after his conviction, defendant hatched an escape plan from the Orleans Parish Community Correctional Facility.[39] The plan involved digging out mortar around a cell window and replacing it with a putty-like substance, formulated of toilet paper and Selsun Blue shampoo.[40] According to the escape plan, about which the U.S. Marshal Service was informed, the cell window would then be loosened, and defendant and his co-conspirators would escape using magazines and rope made of dental floss before sailing to Honduras.[41] Furthermore, Morgan has had disciplinary issues while incarcerated, including, most recently, possessing alcohol or drugs.[42]

The nature and circumstances of the narcotics offense combined with Morgan's disciplinary violations demonstrate that he would be a danger to the community if released.[43] *Cf. Perdigao*, 2020 WL at *4 (finding that the defendant was not a danger

---

[37] R. Doc. No. 540, at 7 (citing R. Doc. No. 156).
[38] *Id.* (citing 540-7, at 4 ¶ 7).
[39] R. Doc. No. 540-7, at 6 ¶ 22, & 5 ¶¶ 12–15.
[40] *Id.* at 4 ¶ 7.
[41] *Id.* at 5 ¶ 13–14.
[42] R. Doc. No. 540, at 8, & 540-6, at 1.
[43] R. Doc. No. 540, at 8, & 540-6, at 1.

to the community, because although he pled guilty to a number of serious crimes, none were crimes of violence or offenses involving controlled substances).

### IV.

After reviewing the § 3553(a) factors[44] and considering the applicable policy statement of the Sentencing Commission, the Court does not find that there are compelling or extraordinary reasons warranting a reduction of Morgan's sentence.

Accordingly,

**IT IS ORDERED** that Maxon Harvey Morgan's motion for reconsideration is **GRANTED**.

**IT IS ORDERED** that Maxon Harvey Morgan's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

**IT IS FURTHER ORDERED** that Maxon Harvey Morgan's motion to expedite is **DISMISSED AS MOOT**.

New Orleans, Louisiana, September 1, 2020.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[44] The Court has specifically considered 18 U.S.C. § 3553(a)(1), (2)(A)–(C), and (5).